UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARTHA SCHOENDORF, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>RTH MECHANICAL CONTRACTORS, )<br>INC., )<br>)<br>)<br>        Defendant. | Docket No. 2:12-cv-00179-GZS |

ORDER ON MOTION TO DISMISS

Before the Court are Defendant RTH Mechanical Contractors, Inc.'s Motions to Dismiss (ECF Nos. 7 & 16). For the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART the Motions.

I. LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). In considering the merits of a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor. Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). The Court must examine the factual content of the complaint and determine whether those facts support a reasonable inference "that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. 678. While "detailed factual allegations" are not necessary, Twombly, 550 U.S. at 555, the

complaint must "contain sufficient factual matter … to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. 678 (quoting Twombly, 555 U.S. at 570) (internal quotations omitted).

"If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)). See also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). At the motion to dismiss stage, however, "a plaintiff is not required to prove her entire case in her pleadings." Bodman v. Maine, Dept. of Health and Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion to dismiss a hostile work environment claim). Indeed, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Id.

## II. FACTUAL BACKGROUND

In mid-December 2008, Plaintiff Martha Schoendorf ("Plaintiff" or "Schoendorf") started work as an Apprentice Pipefitter for her employer, Defendant RTH Mechanical Contractors, Inc. ("Defendant" or "RTH"), on a job at the Togus Veterans Administration in Augusta, Maine (the "Togus job"). The vast majority of the RTH employees working on the Togus job were men. During the time Schoendorf worked on the Togus job RTH had no written anti-discrimination or anti-harassment policy and provided no anti-discrimination or anti-harassment training for its employees. Nevertheless, Schoendorf experienced no harassment and was subjected to no inappropriate comments during the first ten months on the job. Then, in early October 2009, RTH assigned Richard Munn to work as a Foreman on the Togus job. Prior

to this assignment, the owner of RTH, Richard Hansell, had told the Togus job supervisor, Dave Edwards, that Munn had expressed that he did not want to work with any women on the job, and Hansell explained to Edwards that he should report any inappropriate behavior by Munn directly to Hansell.

After Munn arrived on the job in early October 2009, he began yelling at Schoendorf and made frequent degrading sex-based comments to Schoendorf. On one occasion Munn said to Schoendorf: "you can't bend over like that while you work." (First Am. Compl. (ECF No. 9) ¶ 17.) Another time, in November 2009, Munn said to Schoendorf while holding a ladder for her: "I looked up your shirt, but I didn't see anything." (Id. ¶ 18.) Then, on November 25, 2009, while Schoendorf was repositioning Munn's truck so that it would not be blocked by another truck at the job site, Munn lost his temper and called Schoendorf either "number than a pounded fucking cunt" or a "dumb fucking cunt." (Id. ¶ 19.) Later in the day, Munn called Schoendorf a "stupid fucking bitch," and after chasing her into a building he called her a "dumb bitch." (Id.) When Schoendorf confronted Munn about his name calling, Munn responded by shouting: "Shut the fuck up. If you can't operate a vehicle, you shouldn't be an apprentice, stupid fucking bitch." (Id.) Additionally, Schoendorf learned that Munn had made numerous derogatory sex-based comments about her outside her presence. The union steward, Brian Bean, heard some of those comments.

On December 7, 2009, Schoendorf spoke with Steven Sacharczyk, a RTH project manager, and demanded that he document Munn's hostile comments. Schoendorf said that she would contact the Human Rights Commission if Sacharczyk did not document the comments. Later the same day, Sacharczyk convened a meeting with Shoendorf, Dave Edwards, Gary Sainio (Schoendorf's union representative), and Munn. At the meeting, Sacharczyk told

Schoendorf: "You should expect this kind of behavior in this line of work." (Id. ¶ 21.) Additionally, Munn threatened Schoendorf, telling her that if she wanted to document the incident, "I'll write you up for everything and document all of it."[1] (Id.; Pl.'s Obj. to Def.'s Mot. to Dismiss at 3 n.1.) The next day Munn required Schoendorf to hand over keys she held to certain locked doors that she needed to access as part of her job. Schoendorf does not allege any additional harassment, and she does not allege that her job was terminated or that any other retaliatory measures were taken.

Schoendorf subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that RTH had discriminated against her on the basis of her sex and had retaliated against her for opposing the discrimination, in violation of Title VII of the Civil Rights Act of 1964. (See Order Granting Motion to Change Venue (ECF No. 23), Civil No. 11–cv–566–JL, 2012 WL 1986508, at *1 (D.N.H. May 31, 2012).) The form used to file the charge with the EEOC erroneously listed the New Hampshire Human Rights Commission ("NHRC") as the "state or local agency." Nonetheless, the EEOC conducted an investigation concerning Schoendorf's charges and concluded that, in its view, Schoendorf had failed to show a violation of Title VII. The EEOC issued Schoendorf a notice of her right to sue, and on December 7, 2011, Schoendorf commenced this action against RTH. Her Complaint (ECF No. 1) alleged a discriminatorily hostile work environment and retaliation in violation of both Title VII and the analogous provisions of the New Hampshire Law Against Discrimination, N.H. Rev. Stat. Ann. § 354-A:7 ("NHLAD"). RTH responded by filing a motion to dismiss all of Schoendorf's claims, except for her retaliation claim under federal law. (See ECF No. 7 & 7-

---

[1] Plaintiff's Amended Complaint erroneously attributes this remark to Sacharczyk and Plaintiff sought to correct the error in subsequent filings. (See Pl.'s Obj. to Def.'s Mot. to Dismiss at 3 n.1.) Plaintiff has stated that she will move for leave to amend her complaint to correct the error should the Court deny Defendant's Motion to Dismiss.

1.) One of RTH's arguments was that the NHLAD does not cover the allegations of a Maine resident relating to acts occurring at a workplace in Maine. Schoendorf's counsel responded by contacting the NHRC, where she learned, for the first time, that while her charge had erroneously listed the NHRC as the responsible state or local agency the NHLAD likely did not apply to the events giving rise to her complaint. Schoendorf then filed an Amended Complaint (ECF No. 9) asserting hostile work environment and retaliation claims under the Maine Human Rights Act in addition to her Title VII claims. Schoendorf then moved, successfully, to transfer the action to this District. RTH moved to dismiss Schoendorf's Amended Complaint. (See ECF No. 16 & 16-1). Based on the foregoing, the Court's analysis herein is addressed toward the arguments presented in RTH's most recent motion to dismiss (ECF No. 16), although the Court disposes of both motions to dismiss in this Order.

### III.  DISCUSSION

Based on the foregoing factual allegations, Schoendorf alleges that Defendant violated state and federal law by subjecting her to a hostile work environment and by retaliating against her when she reported allegations of harassment by Munn. Specifically, Schoendorf's Amended Complaint states the following Counts: hostile work environment, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) (Count I); retaliation, in violation of Title VII of the Civil Rights Act, § 2000e-3(a) (Count II); and retaliation, in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4572(1)(A) (Count III). Schoendorf seeks compensatory and punitive damages, costs and attorneys' fees, the costs of all expert witness fees, and "such additional relief as this Court deems appropriate."

### A. Hostile Work Environment (Count I)

In Count I, Schoendorf alleges that RTH subjected her to a hostile work environment in violation of federal law. RTH responds that the facts alleged in support of her hostile work environment claim are insufficient to state such a claim. RTH asserts that Schoendorf's Amended Complaint alleges just two instances of verbal harassment plus additional derisive comments to the union steward outside her presence, and that these allegations fail to state a claim under Title VII.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Included within this broad prohibition is the maintenance or tolerance of sex-based discrimination that creates a "hostile or abusive work environment." Billings v. Town of Grafton, 515 F.3d 39, 47 (1st Cir. 2008) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986); Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 227-28 (1st Cir. 2007)). To prove a sex-based hostile work environment claim, a plaintiff must establish that the harassment was "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" Id. (quoting Meritor, 477 U.S. at 67; Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The point at which a work environment becomes hostile or abusive does not depend on any "mathematically precise test;" rather, the determination must be made from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Id. at 48 (quoting Harris, 510 U.S. at 22; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). These circumstances include: (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether it was physically

threatening or humiliating, (4) whether it was just a mere offensive utterance, and (5) whether it unreasonably interfered with the employee's work performance. See id. (citing Harris, 510 U.S. at 23).

Generally speaking, "it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of employment" and created a hostile work environment. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18-19 (1st Cir. 2002) (internal citation and quotation omitted). Indeed, "[b]ecause this inquiry is fact specific, the determination is often reserved for a fact finder, … but summary judgment is an appropriate vehicle for 'polic[ing] the baseline for hostile environment claims.'" Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (internal citations and quotations omitted). Courts differentiate between potentially meritorious suits involving severely or pervasively hostile treatment and nonmeritorious suits involving basic civility issues characterized by "isolated incidents," "simple teasing," "or "mere offensive utterance[s]" by using "common sense" and an "appropriate sensitivity to social context." Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003). See also Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002) (stating that the "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII") (internal citation and quotation omitted). Thus, courts have long stressed that the hostile work environment standards are "sufficiently demanding to ensure that Title VII does not become a general civility code." See, e.g., Bodman, 720 F. Supp. 2d at 120 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998)).

Defendant asserts that Schoendorf's allegations are insufficient to survive a motion to dismiss because her allegations cannot satisfy the "severe or pervasive" requirement for a hostile

work environment claim.  Defendant also asserts that it would be particularly appropriate for the Court to "police the baseline" of hostile work environment claims by dismissing this case at the motion to dismiss stage.  As Defendant concedes, however, "whether an environment is sufficiently hostile or abusive so as to be actionable must be judged by looking at all the circumstances…." (Def.'s Mot. to Dimiss (ECF No. 16-1) at 6.)  Thus, while Defendant's argument might well succeed at the summary judgment stage of litigation when the details are clearer, Defendant cannot establish that the alleged instances of harassment fail to state a claim that is plausible on its face.

Analyzing the merits of a hostile work environment claim is a fact-intensive exercise requiring that the court look at all the relevant circumstances.  See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001).  At the motion to dismiss stage, however, the factual record before the Court is by its very nature incomplete.  See Fed. R. Civ. P. 8(a)(2) (requiring only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief").  Tellingly, Defendant cites no case law to support its contention that more than two sex-based harassing comments are required to state a hostile work environment claim.  Indeed, in contending that Schoendorf's claim should be dismissed, "Defendant fails to acknowledge that the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman, 720 F. Supp. 2d at 121 (internal citations omitted).

Here, Schoendorf's Amended Complaint clears the motion to dismiss hurdle because her Amended Complaint includes factual allegations that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged" – specifically, that she was subjected to harassment that was sufficiently severe or pervasive so as to alter the conditions of

her employment and create an abusive work environment. Iqbal, 556 U.S. at 678. Looking at the facts alleged in Schoendorf's Amended Complaint in the light most favorable to her, the Court finds there to be sufficient factual allegations to suggest that Schoendorf was subjected to harassment that was sufficiently severe or pervasive so as to alter the conditions of her employment at RTH. While the First Circuit has said that it would "not preclude the possibility of a single-incident hostile work environment claim based on exclusively verbal conduct," Pomales, 447 F.3d at 84, Schoendorf's Amended Complaint alleges far more. Schoendorf alleges that her supervisor, Richard Munn, "made frequent degrading sex-based comments about [her]." (Am. Compl. ¶ 17.) In addition, Schoendorf highlights a trio of specific instances involving sex-based verbal harassment. First, Munn told Schoendorf, "you can't bend over like that while you work." (Id.) Second, while holding a ladder for Schoendorf in November 2009, Munn said to her, "I looked up your shirt, but I didn't see anything." (Id. at 18.) And third, on November 25, 2009, after an incident involving Schoendorf driving Munn's truck, Munn called Schoendorf either "number than a fucking cunt" or a "dumb fucking cunt." Later that day Munn called Schoendorf a "stupid fucking bitch," then a "dumb bitch," and finally, after Schoendorf confronted Munn regarding his comments, he yelled: "Shut the fuck up. If you can't operate a vehicle, you shouldn't be an apprentice, stupid fucking bitch."[2] (Id. ¶¶ 17-19.)

Defendant makes much of the fact that Schoendorf has not alleged that Munn initiated any physical contact with Schoendorf, but a lack of physical contact is not dispositive of hostile

---

[2] Schoendorf's Amended Complaint also avers that Munn made numerous derisive sexist comments about Schoendorf outside her presence. Some courts have concluded that derisive comments directed at the plaintiff may be relevant even if made outside the plaintiff's presence. See Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 336 (6th Cir. 2008) (stating that "the factfinder may consider similar acts of harassment of which a plaintiff becomes aware during the course of his or her employment, even if the harassing acts were directed at others or occurred outside of the plaintiff's presence."); Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997) (holding that a plaintiff's second-hand knowledge of racially derogatory comments or jokes can impact the work environment); Rodgers v. W.S. Life Ins. Co., 12 F.3d 668, 673-75 (7th Cir. 1993) (noting that racial epithets targeted at other employees were relevant to a plaintiff's hostile work environment claim and considering racial statements made outside of the plaintiff's presence).

work environment claims. See, e.g., Puno v. Mount Desert Island Hosp., Civ. No. 06-106-B-W, 2007 WL 1875830, at *8 (D. Me. June 28, 2007) (denying defendant's summary judgment motion based on a "trio of utterances," various disciplinary treatments, and plaintiff's ultimate termination, but not physical contact). The sex-based statements alleged in the Amended Complaint are sufficiently severe to state at least a plausible hostile work environment claim. Accordingly, while the Court is unsure that Schoendorf ultimately will prove her claim, the Court finds at this stage of the case that Schoendorf states a Title VII claim sufficient to defeat Defendant's motion to dismiss.

### B. Retaliation (Counts II & III)

In Counts II and III, Schoendorf alleges that Defendant retaliated against her in violation of the Maine Human Rights Act ("MHRA") and Title VII of the Civil Rights Act.[3] Defendant replies that Schoendorf fails to state a claim for retaliation because she does not allege facts sufficient to establish that she suffered an "adverse employment action," as is required under the MHRA and Title VII.

As a preliminary matter, the Court first addresses an issue that the parties have not briefed – whether Schoendorf's retaliation claim under the MHRA (Count III) must be dismissed because she filed her discrimination complaint not with the Maine Human Rights Commission ("MHRC") but with the EEOC. As this Court has stated previously, although the MHRC's regulations deem a plaintiff to have filed a complaint with the MHRC on the date she filed her complaint with the EEOC, a plaintiff cannot satisfy the requirements necessary for MHRA

---

[3] Defendant also makes an unsupported argument that Schoendorf's retaliation claim is time-barred by the MHRA's two-year limitations period. As Schoendorf points out, however, the alleged retaliatory actions occurred on December 7 and 8, 2009 and Schoendorf filed her original Complaint (ECF No. 1) on December 7, 2011, just barely within the two-year limitations period. While Schoendorf's original Complaint did not contain a retaliation claim under the MHRA, her First Amended Complaint (ECF No. 9), filed February 21, 2012, contained a retaliation claim under the MHRA that properly relates back to the original Complaint. Accordingly, under Fed. R. Civ. P. 15(c)(1)(B), her MHRA retaliation claim is timely.

damages when the MHRC takes no action related to her case. See Williams v. Interstate Brand Cos., 304 F. Supp. 2d 74, 76-77 (D. Me. 2004). Damages and attorneys' fees are permitted under the MHRA only where the MHRC undertakes one of the following statutorily prescribed actions – dismissing a complainant's case, finding reasonable grounds to believe unlawful discrimination had occurred but failing to enter into a conciliation agreement to which the complainant was a party within 90 days of such a finding, or issuing a right-to-sue letter.[4] See 5 M.R.S.A. § 4622.[5]

In this case, however, the MHRC has not undertaken any of those actions, and a plaintiff cannot to satisfy the requirements of § 4622 by replacing a MHRC right-to-sue letter with a similar letter issued by the EEOC, as Schoendorf seeks to do here. See Williams, 304 F. Supp. 2d at 77. Thus, Schoendorf fails to satisfy the requirements of § 4622. Failure to satisfy the requirements of § 4622 when Schoendorf seeks only attorneys' fees and damages under the MHRA renders her MHRA claim moot because Schoendorf cannot be afforded any effective relief on her claim. See id. (dismissing MHRA claim on identical grounds). Accordingly, Schoendorf's retaliation claim under the MHRA must be dismissed.

The Court now turns to Schoendorf's retaliation claim under Title VII of the Civil Rights Act. Title VII's anti-retaliation provision forbids discrimination against employees because they have opposed practices that are unlawful under Title VII. See 42 U.S.C. § 2000e-3. To prove a retaliation claim, Schoendorf must show that: (1) she "undertook some protected conduct," (2) she "suffered an adverse employment action," and (3) "the two were causally linked." Alvarado

---

[4] As this Court noted in Williams, quoting the Maine Law Court, "a plaintiff who wants to recover attorney's fees, compensatory damages, and punitive damages under the MHRA 'must first present the claim to the Maine Human Rights Commission, then, after action by the Commission, the party may bring a private action for discrimination.'" Williams, 304 F. Supp. 2d at 77 n.4 (quoting Kopenga v. Davric Maine Corp., 727 A.2d 906, 908 n.1 (Me. 1999)).

[5] Section 4622 contains an exception, not applicable here, that allows for MHRA damages in the absence of MHRC action where an MHRA claim is joined with a claim that does not require exhaustion of administrative remedies. See § 4622. See also Dudley v. Hannaford Bros. Co., 333 F.3d 299, 312 (1st Cir. 2003).

11

v. Donahoe, --- F.3d ---, 2012 WL 2926162, at *3 (1st Cir. July 19, 2012) (internal citations omitted). A plaintiff establishes an adverse employment action by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)). Such a claim "is not limited to discriminatory actions that affect the terms and conditions of employment." Id. (citing Burlington N., 548 U.S. at 64).

This is an objective test that should be judged "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Id. (internal citations and quotations omitted). Some examples of materially adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation," id., as well as "disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees … subject to the facts of a particular case." Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 37 (1st Cir. 2011). On the other hand, "[m]inor disruptions in the workplace, including 'petty slights, minor annoyances, and simple lack of good manners,' fail to qualify." Morales-Vallellanes, 605 F.3d at 36 (quoting Burlington N., 548 U.S. at 68). See also Alvarado, 2012 WL 2926162, at *6 (holding that "a string of trivial annoyances" fails to qualify as an adverse employment action and noting that "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins … to survive

the slings and arrows that workers routinely encounter in a hard, cold world") (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000)).

Defendant contends that Schoendorf has failed to allege sufficient facts to state a claim for retaliation. This contention raises a closer question on the retaliation claim than on the hostile work environment claim. Schoendorf's Amended Complaint does not allege termination, demotion, loss of benefits, a disadvantageous transfer or assignment, refusal to promote, unwarranted negative job evaluations, or toleration of harassment by other employees. See Morales-Vallellanes, 605 F.3d at 36; Colon-Fontanez, 660 F.3d at 37. Rather, Schoendorf presents limited allegations concerning three retaliatory acts: (1) Munn's threat during the December 7 meeting that if she wanted to document the November 25 incident then he would "write you up for everything and document all of it;" (2) Sacharczyk's statement during the December 7 meeting regarding Munn's November 25 comments that Schoendorf "should expect that kind of behavior in this line of work;" (3) and Munn taking away Schoendorf's keys to certain areas at the Togus job site. Schoendorf argues that Munn's threat to "write you up and document all of it" could dissuade a reasonable employee from pursuing a harassment complaint, particularly when coupled with Sacharczyk's lack of response to Munn's statement and Sacharczyk's statement that Schoendorf "should expect that kind of behavior in this line of work." Moreover, she argues that Munn's actions in taking away Schoendorf's keys, which provided access to areas of the Togus job site, significantly diminished Schoendorf's ability to perform her job successfully, particularly when coupled with Munn's threat to "write you up."

In combination, the threat of unwarranted write-ups by Munn, Sacharczyk's statement that "you should expect that kind of behavior in this line of work," and Munn's depriving Schoendorf of keys to certain areas of the Togus job site state a plausible claim for retaliation.

While Schoendorf may have difficulty showing that these acts rise to the level of an adverse action at summary judgment, "[t]he standard for surviving a motion to dismiss is not especially high." Galouch v. Maine Dep't of Prof'l & Fin. Regulation, --- F. Supp. 2d ---, 2012 WL 1247237, at *6 (D. Me. April 13, 2012). Indeed, Defendant has cited no case dismissing a Title VII retaliation claim on a motion to dismiss. Accepting as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff's Title VII retaliation claim survives the motion to dismiss. See Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

### IV. CONCLUSION

For the aforementioned reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motions to Dismiss (ECF Nos. 7 & 16). Defendant's Motion is DENIED as to Counts I and II and GRANTED as to Count III.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 6th day of August, 2012.